IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIMINAL ACTION NO. |
| v. ) | 2:20-cr-224-RAH |
| ) | [WO] |
| LONNIE MITCHELL ) | |

**AMENDED MEMORANDUM OPINION and ORDER**

This Opinion amends the Opinion (Doc. 88) entered by the Court on July 19, 2021.[1]

Defendant Lonnie Mitchell ("Mitchell") was charged on October 29, 2020, in an indictment with one count of possession of a firearm and ammunition after having previously been convicted of a felony in violation of 18 U.S.C. § 922(g)(1). (Doc. 1.) On December 7, 2020, he filed a motion to suppress all evidence seized from a residence (Yarbrough Street) during the execution of a search warrant on September 16, 2020, and any statements made after his arrest on the same date. Claiming the officers did not have probable cause to search the residence, Mitchell contends all evidence seized and statements made should be suppressed because the search violated the Fourth Amendment to the United States Constitution.

After a two-part evidentiary hearing on the motion, the Magistrate Judge

---

[1] This Amended Opinion removes a reference on page 10 and alters language in the conclusory paragraph from the July 19, 2021, Opinion.

recommended the court grant the Motion to Suppress Evidence. (Doc. 65.) On June 28, 2021, the United States filed the Government's Partial Objections to the Report and Recommendation of the Magistrate Judge. (Doc. 68.) Upon an independent and *de novo* review of the record, including a review of the transcript, and for the reasons that follow, the court rejects the Recommendation of the Magistrate Judge that the Defendant's Motion to Suppress be granted.

## I. STANDARD OF REVIEW

When a party objects to a magistrate judge's report and recommendation, the district court must review the disputed portions of the recommendation *de novo*. 28 U.S.C. § 636(b)(1). The district court "may accept, reject, or modify the recommendation; receive further evidence; or resubmit the matter to the magistrate judge with instructions." FED.R.CRIM.P. 59(b)(3).

*De novo* review requires the district court to independently consider factual issues based on the record. *Jeffrey S. ex rel. Ernest S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 513 (11th Cir. 1990). "Although *de novo* review does not require a new hearing of witness testimony, *United States v. Raddatz,* 447 U.S. 667, 675–76, 100 S.Ct. 2406, 2412–13, 65 L.Ed.2d 424 (1980), it does require independent consideration of factual issues based on the record." *Id.* If the magistrate judge made findings based on witness testimony, the district court must review the

transcript or listen to a recording of the proceeding. *Id.* The court has reviewed the transcript of the suppression hearing in its entirety.

## II. DISCUSSION

The Magistrate Judge provided a thorough recitation of the facts in her recommendation. Consequently, a summary of the facts related to the motion to suppress is not necessary, as the court adopts the Magistrate Judge's findings of fact as set forth in the recommendation.

### A. The Lack of a Substantial Basis to Find Probable Cause

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The Amendment protects individuals against unreasonable searches of "their persons [and] houses." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (alteration in original). The Fourth Amendment further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. Probable cause to support a search warrant exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Trader*, 981 F.3d 961, 969 (11th Cir. 2020).

Mitchell contends that the affidavit supporting the issuance of the search warrant did not establish probable cause. A court reviewing the issuance of a search warrant by a state court judge is not to conduct a de novo probable cause determination, but is merely to decide whether the evidence viewed as a whole provided a "substantial basis" for the finding of probable cause at the time the warrant was issued. *Massachusetts v. Upton*, 466 U.S. 727, 732-33 (1984) (per curiam); *Gates*, 462 U.S. at 236.

> The task of the issuing [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the [judge] had a "substantial basis for ... conclud[ing]" that probable cause existed.

*Gates*, 462 U.S. at 238–39 (alteration in original). Probable cause "is a fluid concept—turning on the assessment of probabilities in particular factual contexts[.]" *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999).

The affidavit at issue provides the following information:

1. On August 25, 2020, Agents met with an individual who stated that he/she had resided at this residence, during a time that he/she was completing sex for money jobs at the instruction of LONNIE DONTAE MITCHELL.

2. Narcotics possession and usage along with firearms were described as being present at any given time.

3. Personal items were left behind when he/she left the residence in fear of

    his/her safety for wanting to leave the way of life.

4. Agents met with a second individual who stated that he/she had periodically stayed at this residence, during a time that he/she was completing sex for money jobs at the instruction of LONNIE DONTAE MITCHELL.

5. An Alabama Identification Card and other identifying documents were taken from this individual by B.J. at the direction of MITCHELL.

6. On September 13, 2020, a third individual stated that he/she was recently at the residence (within 24 hours) and had personal items still inside.

7. He/she stated that multiple persons stayed at the residence at any given time and that MITCHELL utilized a room with all new furniture and electronics purchased with illegal proceeds.

8. Documents, records, drug paraphernalia, narcotics, and firearms were described as being present within the last 24 hours.

Based upon the aforementioned facts and observations, my training and experience and conversations that I have had with other Law Enforcement officers and reports that I have read, it is my opinion that the persons listed on this Search Warrant have committed and are engaged in an ongoing conspiracy to commit the crimes of; Human Trafficking 1st Degree 13A-6-152 (A Felony); Unlawful Distribution of Controlled Substance 13A-12-211 (C Felony); Unlawful Possession of Controlled Substance 13A-12-211 (C Felony); Unlawful Possession of Controlled Substance 13A-12-212 (D felony); Certain Persons Forbidden to Possess Pistol 13A-11-72 (C Felony).

(Doc. 41-1 at 4.)

    The Government objects to the Magistrate Judge's determination that the affidavit did not provide a substantial basis for the Montgomery County Circuit Court Judge to find probable cause to issue the warrant to search the residence on

Yarbrough Street. The Government also objects to the Magistrate Judge's finding that the Affidavit did not establish a sufficient connection between the residence and the crimes as alleged.

A Montgomery County circuit judge reviewed Agent R. Holston's affidavit and determined that probable cause to search the Yarbrough residence did exist. Conversely, the Magistrate Judge also reviewed Agent Holston's affidavit but found probable cause was lacking. The question of probable cause in this case easily could be debated among similarly-experienced jurists, and the conclusions would likely mirror those of either judge. *See United States v. Leon*, 468 U.S. 897, 914 (1984) ("Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination.").

To the extent the Magistrate Judge found that the affidavit did not provide a *substantial* basis for the state court judge to find probable cause to issue the warrant, the undersigned agrees. The facts contained in the affidavit leave much to be desired. For example, the affidavit does not clearly state that sex-for-money jobs occurred at the Yarbrough residence. Also, with respect to the first and second individuals, the affidavit does not state the specific time period they were present in

the Yarbrough residence. Although the affidavit states the third individual was present in the residence within a 24-hour period and that Mitchell had a room with new furniture purchased with illegal proceeds, the affidavit generally states drug paraphernalia, narcotics, and firearms were present, and that "multiple persons stayed at the residence at any given time." (Doc. 52-3 at 4.) This court, therefore, agrees that the affidavit, on its face, did not provide a *substantial* basis for the state court judge to find probable cause to issue the no-knock warrant. This determination, however, does not end the inquiry.

### B. The *Leon* Good Faith Exception

In *United States v. Leon*, *supra*, the Supreme Court recognized a good faith exception to the exclusionary rule for searches conducted pursuant to warrants. Observing that the purpose of the exclusionary rule is to deter unlawful police conduct, the Court found that this purpose would not be served, and the rule should not be applied, when officers engage in "objectively reasonable law enforcement activity." 468 U.S. at 918–19. In particular, the Court held that the suppression of evidence would have no deterrent effect "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *Id*. at 920. Under *Leon*, searches conducted pursuant to warrants will rarely require suppression; however, the *Leon* court did identify four situations in which

suppression would be appropriate. *Id*. at 923. These situations are: (1) where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "where the issuing magistrate wholly abandoned his judicial role"; (3) where the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where, depending upon the circumstances of the particular case, a warrant is "so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid." *Id*. at 923 (internal quotation marks omitted).

The Magistrate Judge found that the third exemption to the *Leon* good-faith exception applies because "the affidavit is so obviously lacking in indicia of probable cause that official belief in the validity of the search warrant was entirely unreasonable." (Doc. 65 at 35.) The Government objects to this finding.

When determining whether the third exemption applies, the court looks to the face of the affidavit. *Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002) ("[W]e look to the face of the particular affidavit at hand in order to determine whether the warrant is so devoid of probable cause that [the officer's] belief in its validity at the time it was issued was entirely unreasonable."); *United States v. Robinson*, 336 F.3d 1293,

1296 (11th Cir. 2003) ("[T]o determine whether an affidavit lacks sufficient indicia of probable cause, we look only at the face of the affidavit."). Suppression is only warranted if the affidavit supporting the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Brown v. Illinois*, 422 U.S. 590, 610-11 (1975).

While the affidavit may have lacked some specificity, it did allege that two individuals had resided or stayed in the residence and completed sex-for-money jobs at Mitchell's instruction, with the first of those individuals reporting that guns and drugs were present and that she left the residence in fear of her safety and the second individual reporting that documents were taken from her at Mitchell's instruction. More importantly, the affidavit also stated that a third individual, who was recently at the residence during the last 24 hours, had provided a description of a room used by Mitchell, and reported that documents, drug paraphernalia, narcotics, and firearms were present in the house. Thus, it would be reasonable for an officer to believe that Mitchell stayed in the residence and that ongoing criminal activity occurred there. This court therefore cannot conclude that the warrant affidavit was so lacking in an *indicia* of probable cause as to render belief in its existence *entirely unreasonable*.

The court now turns to the question of good faith. The good-faith exception

requires suppression of the evidence only if the law enforcement officers executing the warrant in question could not have harbored an objectively reasonable belief in the existence of probable cause. *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002). Thus, the court may look beyond the four corners of the affidavit and search warrant to determine whether Agent Holston reasonably relied upon the warrant. *See Martin*, *supra*.

During the suppression hearing, Agent Holston testified that he was aware Mitchell had a prior robbery conviction, as well as a charge against him for being a person forbidden from possessing a firearm. (Doc. 53 at 13.) Beginning in 2020, the first individual listed in the affidavit gave multiple statements to Agent Holston and/or other law enforcement officers. (*Id*. at 14.) This first individual reported that she stayed with Mitchell, B.J. (another female), and the second individual, in the Yarbrough residence, that Mitchell subjected her to sex-for-money acts, that he provided her narcotics in return for performing the acts, and that she was required to give money that she earned from the acts to Mitchell or another female. (*Id*. at 14-15, 17, 21, 64.) In addition to reporting that Mitchell, or at his direction another female, would physically beat girls who did not do what was expected of them, she also reported that the commercial sex acts ("plays") were set up through a website called "Skip the Games" (*Id*. at 15.) She also provided a statement that the

distribution of narcotics occurred in the residence on multiple occasions over several months. (*Id*. at 21.) She also commented that she believed that the third individual was her "replacement." (Doc. 23.) The agent's understanding was that the first individual left the residence in April 2020.[2] (*Id*. at 105)

Agent Holston also testified about an undercover operation on September 12-13, 2020. An undercover officer responded to an ad on the Skip the Games website and arranged for a meeting at a hotel. (*Id*. at 29.) When B.J. arrived with the second and third individuals at the hotel, law enforcement officers took them into custody and brought them to the police command center for questioning. (*Id*. at 30.) The second individual reported that the heroin found in her wallet came from "our house" on Yarbrough Street. (*Id*.) She also told an officer that B.J. took away her social security card at Mitchell's direction. (*Id*. at 31.)

The third individual provided multiple statements, including a formal interview as well as comments to the takedown officer and an informal discussion with Agent Holston after her interview. The third individual told the takedown officer that she was on a video chat with Mitchell at the time they were taken into custody. (*Id*. at 33.) Agent Holston also testified that, through his investigation, he

---

[2] Agent Holston initially testified that his understanding was that the first individual left the residence between one and three months before the search warrant was obtained. (*Id*. at 25.)

learned that it was common for Mitchell to video chat with one of the females in the room when a sex-for-money act was committed. (*Id*.)  At some point, the third individual told Agent Holston that Mitchell normally had a firearm, that she managed the narcotics transactions for Mitchell, and that the drugs were kept in and sold from the Yarbrough residence. (*Id*. at 35-36.)  During the early morning hours of the investigation on September 13, 2020, this third individual also stated that she had been at the Yarbrough residence within the last 24 hours. (*Id*. at 36.)  Agent Holston also obtained information from the third individual's phone.  On the night of the undercover operation, Agent Holston found multiple message threads where she was engaged in a conversation with Mitchell about narcotics transactions, plays, and "moneys coming in and going out." (*Id*. at 38.)

It is clear from Agent Holston's testimony regarding the knowledge he received during the course of his investigation, including the multiple statements from the individual women, a review of the website, and cell phone records, that he had reason to believe there was a connection between Mitchell and the Yarbrough residence and that ongoing criminal activity was occurring in the house.  When considering the totality of the circumstances, this court finds that a reasonably well-trained officer would have relied upon the warrant. *United States v. Taxacher*, 902 F.2d 867, 872 (11th Cir. 1990).  Consequently, the *Leon* good faith exception is

applicable to the search of the Yarbrough residence.

### III.  CONCLUSION

For the reasons as stated, the court concludes as follows:

1. To the extent the Government objects to the Magistrate Judge's determination that the *Leon* good faith exemption is applicable, that the good faith exception does not apply with respect to the search of the Yarbrough residence, and that the evidence obtained and the Defendant's statement should be suppressed as the fruit of the poisonous tree, the Government's objections are SUSTAINED and the Recommendation is REJECTED.

2. The Motion to Suppress is DENIED.[3]

DONE, on this the 23rd day of July, 2021.

                          /s/ R. Austin Huffaker, Jr.
                          R. AUSTIN HUFFAKER, JR.
                          UNITED STATES DISTRICT JUDGE

---

[3] The Court addressed the Defendant's argument regarding the scope of the warrant to search the Yarbrough residence in a separate Order and Opinion.